AF Approval _KL for JAM_    Chief Approval _____

Digitally signed by
JAMES PRESTON
Date: 2023.03.30
16:56:39 -04'00'

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                    CASE NO. 8:22-cr-190-MSS-SPF

ARNULFO RODRIGUEZ-MUNOZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Arnulfo Rodriguez-Munoz, and the attorney for the defendant, David Hudson, Esq., mutually agree as follows:

**A.    Particularized Terms**

1. Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and Three through Five of the Indictment. Count One charges the defendant with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. Counts Three through Five charge the defendant with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841.

2. Minimum and Maximum Penalties

Counts One and Three through Five are punishable by a mandatory minimum term of imprisonment of 15 years up to life, a fine of not more than $20

Defendant's Initials _AR_

million, term of supervised release of at least 10 years, and a special assessment of $100 per felony count.

3. *Alleyne v. United States and Apprendi v. New Jersey*

Under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of 15 years' imprisonment and a maximum sentence of life as to Counts One and Three through Five because the following facts have been admitted by the defendant and are established by this plea of guilty:

The defendant has the following serious drug felony convictions: Possession of a Controlled Substance with Intent to Distribute and Aiding and Abetting, Case No. 4:05-CR-00140-Y-1 (N.D. Tex.) (sentenced to 120 months).

4. Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First: That two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute cocaine;

Second: The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third: The amount the defendant conspired to possess with intent to distribute was five kilograms or more of cocaine.

Defendant's Initials  2

The elements of Counts Three through Five are:

First: The defendant knowingly possessed cocaine as charged;

Second: The defendant intended to distribute the cocaine; and

Third: The weight of the substance the defendant possessed with intent to distribute was more than five kilograms of cocaine.

5. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not

Defendant's Initials _____  3

binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

Defendant's Initials _AR_    4

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8

Defendant's Initials AR    5

will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be

Defendant's Initials _____   6

binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.     Standard Terms and Conditions**

    1.     <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $500, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

Defendant's Initials _AK_                              7

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials AR    9

6. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

Defendant's Initials AR        10

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

Defendant's Initials AR

11

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _HR_            12

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Defendant Rodriguez-Munoz was part of a conspiracy to distribute narcotics in the Middle District of Florida.

First, in June 2021, Rodriguez-Munoz told a confidential source (CS-1) that co-Defendant Velasquez had 12 kilograms of cocaine. After further discussions with Rodriguez-Munoz in July, Rodriguez-Munoz gave CS-1's number to Velasquez, who called CS-1 to say he had approximately ten kilograms of cocaine in Texas that he needed to distribute. In early August, Velasquez coordinated with co-Defendant Castillo to deliver 15 kilograms of cocaine to another confidential source posing as an associate of CS-1.

On September 7, 2021, Rodriguez-Munoz called CS-1 in a recorded conversation and said someone was coming to Florida to collect the outstanding debt from the 15 kilograms of cocaine. Rodriguez-Munoz instructed CS-1 to conceal the proceeds inside a semi-truck spare tire. Rodriguez-Munoz later said that Castillo was flying into Tampa and was then going to rent a pickup truck to pick up the tire, then provide it to a semi-truck to return it to Texas. Rodriguez-Munoz provided CS-1 a number to contact Castillo to coordinate the delivery. Investigators then arranged for

Defendant's Initials AR      13

an undercover agent to meet with Castillo. Investigators also prepared 15 bundles disguised as U.S. currency and concealed them inside a semi-truck tire. Castillo and the undercover agent discussed that the spare tire included payments for the 15 kilograms of cocaine.

Second, on the evening of August 25, 2021, Rodriguez-Munoz informed CS-1 that the "owners" of a delivery of a cocaine were in possession of the cocaine. The next morning, in recorded calls, Rodriguez-Munoz called CS-1 and asked CS-1 to provide a meet location so the "owners" could bring seven kilograms of cocaine. Once CS-1's associate collected the money for the seven kilograms of cocaine, the "owners" would release additional kilograms. The "owners" were also expecting upfront payment for least three kilograms of cocaine. Rodriguez-Munoz and CS-1 agreed to set up the meeting for late morning. Rodriguez-Munoz called CS-1 and said the "owners" will be driving a black Raptor truck and will meet with CS-1's associate in the vicinity of a Bradenton apartment complex. FHP stopped the black Raptor truck that had left a Bradenton Airbnb previously identified by law enforcement on SR-64 in Bradenton, FL; co-Defendant David Ceballos was the driver of the vehicle. A K-9 gave a positive alert to the smell of narcotics, and a search of the vehicle discovered six kilograms of cocaine concealed behind the rear seat of the Raptor.

Third, in mid-September 2021, Rodriguez-Munoz told CS-1 that he was planning to travel to Florida from Texas around September 20, 2021 to oversee the delivery of eight kilograms of cocaine. On September 20, 2021, Rodriguez-Munoz

Defendant's Initials ___        14

called CS-1 in the morning and said he was flying to Tampa that afternoon, as the cocaine had arrived in Orlando. On September 21, 2021, law enforcement conducted surveillance on Rodriguez-Munoz. After additional communications with CS-1, Rodriguez-Munoz drove to a shopping center in Bradenton with a Beef O' Brady's at 2pm. Rodriguez-Munoz entered and exited the restaurant several times, until meeting with the driver of a white Explorer around 4:30pm. Rodriguez-Munoz pointed to his rental car, a red Elantra, and the Explorer then parked next to the Elantra. The driver of the Explorer removed a large white box from the back of the Explorer and placed it in the rear passenger seat of the Elantra. Rodriguez-Munoz and the driver shook hands, and Rodriguez-Munoz returned to the restaurant. The exchange was captured by aerial video.

At around 5pm, CS-1 arrived at the restaurant. Forty minutes later, Rodriguez-Munoz and CS-1 exited the restaurant and went to the car, with CS-1 in the driver's seat. A few minutes later, FHP initiated a traffic stop on SR-64 near I-75, and a K-9 detected the odor of narcotics. FHP discovered the speaker box and found ten brick-shaped packages later identified as cocaine concealed inside a large black speaker. Rodriguez-Munoz claimed he just bought the speaker for $100 from a guy in a van while he was out to eat and that he thought the speaker was new.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

Defendant's Initials _HR_          15

12. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this \_\_1st\_\_ day of April, 2023

ROGER B. HANDBERG
United States Attorney

_____
Arnulfo Rodriguez-Munoz
Defendant

_____
Michael R. Kenneth
Assistant United States Attorney

_____
David Hudson, Esq.
Attorney for
Defendant

for _____
James C. Preston
Assistant United States Attorney
Chief, Violent Crimes and
Narcotics Section

17